IN THE UNITED STATES DISTRICT COURT͞ ͞ ͞ ͞ ͞ ͞ ͞ ͞
FOR THE MIDDLE DISTRICT OF ALABAMA
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **TERRY DANIEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 3:05cv1110-F** |
| | ) | |
| **CITY OF LANETT, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, City of Lanett, by and through its attorney of record, and submits the following argument, authority, and evidence in support of its Motion for Summary Judgment.

## PROCEDURAL HISTORY AND FACTS

In this case, the Plaintiff Terry Daniel, alleges that the Defendant, the City of Lanett, Alabama, "City", retaliated against him because of his prior lawsuit and EEOC Complaint. The Plaintiff claims that he was denied a promotion to the position of captain. On November 18, 2005, Daniel filed his original Complaint in this case. (See Complaint as Exhibit "A"). In the Complaint, the Plaintiff goes back through his history with the City of Lanett beginning when he began working as a paid volunteer fire fighter in July of 1978. He admits that he is a basic emergency medical technician or basic EMT.

(See Complaint attached as Exhibit "A"). In the Plaintiff's Complaint, Mr. Daniel claims

he filed a charge of discrimination with the EEOC against the Defendant in 1996, in

which Mr. Daniel alleged that the City discriminated against him in violation of ADA.

Mr. Daniel's EEOC charge alleged that he requested and was denied a reasonable

accommodation for disability. Subsequently, a reasonable accommodation was reached

and Mr. Daniel's EEOC charge was resolved and dismissed. (See Affidavit and Release

signed by Terry Daniel on February 5, 1997 attached as Exhibit "B"). After returning to

work, Daniel was able to preform the full functions of his job while utilizing the wrist

brace. Since the execution of the Release in February of 1997, Daniel has not requested

any other type of accommodation as a result of the alleged disability. (See prior

deposition of T. Daniel, Page 110 attached as Exhibit "C").

Further, of interest is that following a September 1997 application process in

which Daniel applied for a captain's position, then Chief Ralph Cobb met individually

with all the applicants to discuss why they were or were not chosen as the top three

candidates. Chief Cobb testified in the prior lawsuit that he specifically counseled Daniel

about his weaknesses, which included his peer relationships on the job and his reluctance

or refusal to render direct patient care. He further told Daniel that approximately 85% of

the calls which come into the department are ambulance calls, which involve providing

medical care. Many of these calls, approximately 95%, involve a level of care which can

be performed by either a paramedic or basic EMT like Daniel. According to Chief Cobb,

his experience has consistently been with Daniel that he was reluctant or refused to render direct patient care or to document patient care. This, combined with his combative nature and problems with his peer relationships at work led Cobb to the conclusion that Daniel was not a top candidate for the captain's position. (See Ralph Cobbs' deposition, pages 57-58 & 66 attached as Exhibit "D").

Mr. Daniel then filed a charge of discrimination with the EEOC against the City of Lanett in 1999 alleging that the City discriminated against him in violation of the ADA. At that time, his charge alleged that he had previously been denied promotions to the position of captain on at least three separate occasions in retaliation for his complaint of disability discrimination. Mr. Daniel received his right to sue letter from the EEOC and filed suit in the United States District Court for the Middle District of Alabama on April 4, 2000 alleging retaliation and discrimination in violation of the ADA. Mr. Daniel alleged that he had been previously denied a promotion for the position of captain on at least three separate occasions in retaliation for his complaint of disability discrimination. Mr. Daniel's lawsuit was settled and a release was signed by Mr. Daniel on January 24, 2001 releasing any and all claims against the City up to and including any claims that were pending at the time of his signing the release. The settlement was confidential. Therefore, the Release is attached as Exhibit "E" with the amounts redacted.

It appears that Mr. Daniel in June of 2003 made a complaint against the City with a grievance about being changed in his position of fire fighter. However, his Complaint

before the Court in this matter does not discuss this issue or in any way seem to have any bearing upon it. However, for the purposes of the time line of Mr. Daniel's involvement with the City of Lanett, the City lists it.

Thereafter, according to the Complaint, Mr. Daniel asked on November 9, 2004, by then Chief Johnson if due to his lawsuit, would he be promoted to the position of captain when such a position was available. This Defendant made no such agreement with Mr. Daniel at the time of the settlement of the prior lawsuit.

Thereafter, on or about November 15, 2004, a position of captain was posted by the City of Lanett. Mr. Daniel and seven other individuals applied for the position. Then Fire Chief Anthony Johnson requested Captain John Butler and Captain Kelly Meacham to review the applications of each candidate for the captain vacancy and give him a ranking as to their top applicants for the position. Kelly Meacham selected Mr. Daniel as number one and Samuel Thrower as number two. John Butler selected Tim Jennings as number one and Samuel Thrower as number two with Terry Daniel as number seven.

Further, John Butler in his letter of November 29, 2004 to Chief Anthony Johnson stated, "As a member of management and having performed in the capacity of captain, it is in my professional opinion that the individual serving in a supervisory role needs to be certified with the minimum requirements of paramedic." (See November 29, 2004 letter attached as Exhibit "F").

Thereafter, Chief Anthony Johnson submitted a memo to Mayor Oscar Crawley on

December 2, 2004, which states as follows:

> "As you know the city is in the process of promoting a Fire/EMS employee to the rank of Shift Captain. We have eight candidates to choose from that meet the applicable job description. I have had my existing Shift Captains review the applications and rank the candidates in the order in which they feel each individual would be most successful in a supervisory capacity. Both Captains had similar views on a majority of the applicants, but were completely different on their number one pick. Two of our candidates have been with the city for over thirty-five years combined and have well documented **fill-in** (emphasis in memo) command experience, but have never gained the certification of paramedic. All applicants have fire certifications. It is my opinion that the shift supervisor should be a paramedic because of the percentage of ambulance calls verus the amount of fire calls. Over the last four years, 77% of calls for our department have been medical in nature. 5.6% have been fire related. I believe this trend will continue and even increase due to fire prevention and education being taught in the community. I have listed on the next page my ranking of candidates as to whom I feel would be the most successful for the department as well as the city."

(See Memo attached as Exhibit "G".) (See also Affidavit of Mayor Crawley attached as Exhibit "H").

In Chief Johnson's selection, he selected Sam Thrower as number one and Tim Jennings as number two and Terry Daniel was number seven. Mayor Crawley upon the recommendation of the Fire Chief then selected Sam Thrower as captain. The second position that came available was then given to Tim Jennings.

On or about December 12, 2004, Mr. Daniel came to work and found a Garfield cartoon on the bulletin board. He states that someone had marked the characters on the cartoon with one marked as Supervisor Captain Kelly Meacham and he as Garfield. Mr.

Daniel filed an EEOC Complaint basically stating that he had been subjected to a hostile work environment since filing the complaint with the EEOC and proceeding with his complaint in Federal Court. The City filed an Answer on December 20, 2005. Chief Johnson and Captain Kelly Meacham in affidavits respond to the EEOC. (See Affidavit of Chief Johnson attached as Exhibit "I" and the Affidavit of Captain Kelly Meacham attached as Exhibit "J"). These affidavits show that at no time did Mr. Daniel make any complaint to either the Chief or the Captain regarding the alleged cartoon. Further, Mr. Daniel never went through the chain of command or gave any notice to any person of any alleged discrimination or harassment based upon the Garfield cartoon. Lastly, Mr. Daniel never filed a grievance regarding any complaint with either the Garfield cartoon or his not being selected for the captain's position. .

Pertinent to this case is the promotion procedure, which has been employed by the City during the time Daniel has been an employee. The City has traditionally followed a process where a promotion opportunity is posted on a bulletin board and interested parties can submit applications. The applications are reviewed by a senior official in the Fire & EMS Department, typically the chief, who eventually selects the "top three" candidates from the applicants. The top three applicants are then interviewed by the city manager. The city manager ultimately makes the decision on who to promote from the top three applicants. This basic framework has been followed throughout the time that Daniel has been employed with the City.

It is also important to note that the City of Lanett Fire & EMS Department provides firefighting services, emergency medical treatment services, and ambulance service. Accordingly, positions with the department require employees to have both firefighting skills, as well as paramedic or EMT skills for the rendering of patient care. As demonstrated by the Affidavit of former Chief Anthony Johnson, fire operations only make up 5 to 6% of their call volume and almost 80% involve emergency medial situations that require advanced medical training. (See Affidavit of Chief Anthony Johnson attached as Exhibit "I"). However, Mr. Daniel has basic EMT training and has not ever received any further medical training. However, Chief Johnson in his evaluation of Mr. Daniel and in his Affidavit states that he believes Mr. Daniel would be at the top of the promotion list if he were a paramedic. (See Affidavit of Chief Anthony Johnson attached as Exhibit "I")

## SUMMARY JUDGMENT STANDARDS

Summary Judgment must be entered on a claim if it is shown "that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c). On a motion for summary judgment, although the Court is to construe the evidence and factual inferences arising from it in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970), "the plain language of Rule 56 ( c) mandates the entry of summary judgment...against a party that fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett*, 477 U.S.

317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Furthermore, "there is no

issue for trial unless there is significant evidence favoring the non-moving party for a jury

to return a verdict for that party. If the evidence is merely colorable or is not significantly

probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## ARGUMENT

*Any claims or events which predate the January 24, 2001 Release signed by Daniel and the February 5, 1997 Release signed by Daniel should not be considered.*

As stated previously, Daniel filed his first EEOC claim against the City on

September 3, 1996. In his charge, Daniel alleged that he was not given a reasonable

accommodation by the City for his injured right wrist. Eventually, this dispute was

negotiated to a resolution by the City and Daniel and Daniel was returned to work using

wrist braces. Daniel was represented by an attorney during this time and on February 5,

1997, Daniel executed a release with the City, which certifies that the City had provided

him with reasonable accommodation to allow him to return to his job. (See Affidavit &

Release attached as Exhibit "B"). In this Release, Daniel discharged the City "from all

actions, causes of actions, claims and demands arising out of [his] disability as described

in the EEOC case number 130 96 2877..." *Id.* Thus, to the extent that Daniel now seeks

Case 3:05-cv-01110-WKW-SRW    Document 12    Filed 07/28/2006    Page 9 of 20

to re-litigate the events which occurred prior to February 5, 1997, this Honorable Court

should not allow this. To the same extent, the prior lawsuit in which Terry Daniel sued

the City of Lanett arguing basically the same claims he has here, which was settled and at

which time Terry Daniel signed the Release and having counsel, he released the City of

Lanett as follows:

> "Fully releases and forever discharges the City of Lanett, and all of
> its entities, representatives, employees, insureds, agents, and assigns
> (none of whom admit any liability to the undersigned, but expressly
> deny any liability), from any and all claims, demands, damages,
> actions, causes of action, or suits of any kind or nature whatsoever
> arising out of his employment with the City of Lanett to the extent
> that they relate to, result from, or arise out of any act, event, or thing
> occurring or failing to occur at any time in the past including and up
> to the date Terry Daniel executes this release and settlement
> agreement."

(See Release attached as Exhibit "E").

Thus, again, to the extent that Terry Daniel is attempting to re-litigate these events,

any claims asserted by Daniel in this action should be limited to any alleged wrongful

conduct or events which occurred subsequent to the execution of the Release on January

24, 2001. To the extent Daniel does seek to assert claims or rely on evidence of events

which occurred prior to the execution of the Release, the City asserts the executed

Release attached hereto and it entitles it to summary judgment on all such claims.

*The City is entitled to summary judgment on Daniel's claim of retaliation brought
pursuant to the ADA and to the Rehabilitation Act of 1973.*

The Plaintiff in asserting a claim of retaliation under the Rehabilitation Act, must prove: (1) that he is a person with a disability within the meaning of Rehabilitation Act; (2) that he otherwise qualified for the job in question; and (3) that he was discriminated against in employment by an employer.

The Plaintiff in asserting a claim of employment discrimination under the ADA must present a prima facie case showing that (1) he has a disability; (2) he is a "qualified individual," which is to say, able to preform the essential functions of the employment position and that he holds or seeks with or without reasonable accommodation, and (3) the Defendant unlawfully discriminated against him because of the disability. *Reid v. Heil Company*, 206 F.3d 1055, 1061 (11th Cir. 2000).

While the City has never conceded, nor does it at this point, that Daniel is "disabled" as defined under the ADA, he returned to work in February of 1997 and has been able to preform the full functions of his job as apparatus operator with the City by utilizing wrist braces for heavy lifting. He has not required, nor has he requested, any additional accommodations and Daniel has continued to work as an apparatus operator and has been able to meet all of the requirements of that job since returning to work in February of 1997. The pleadings further indicate that Daniel's alleged disability has no effect on his ability to preform the duties of a captain with the City.

The crux of Daniel's claim in this case is that the City has retaliated against him as a result of his filing of the EEOC claim and lawsuit. The City vigorously denies the

claims and asserts that it is entitled to judgment as a matter of law.

The retaliation claims under the ADA are analyzed identically to those brought under Title VII, using the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1998). The *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a prima facie case of discrimination. A prima facie case of retaliation consists of three elements: (1) protected activity; (2) adverse action taken by the employer against the employee; and (3) a causal link between the two. See *Galloway v. GA Technology Authority*, No. 05-15055, 2006 WL 1327808, *2 (11th Cir. May 16, 2006); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonald-Douglas*, 411 U.S. at 802; See also *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. See, *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Pennington*, 261 F.3d at 1266. While the burden of production may shift, the ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Tex. Dept. Of Cmty. Affairs*, 450 U.S. at 253.

At the summary judgment stage, the focus is on whether there is sufficient evidence from which a jury could conclude that the purported reasons for the defendant's adverse employment actions were in actuality a pretext for disability discrimination. *Jones v. School District of Philadelphia*, 198 F.3d 403, 412-13 (3rd Cir. 1998). A plaintiff may defeat a motion for summary judgment by pointing to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken; rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3rd Cir. 1994). A plaintiff cannot interpose genuine issues of material fact with "a mere inference based on speculation and conjecture." *Lowie v. Raymark Ind.*, 676 F.Supp. 1214, 1216 (S.D. Ga. 1987). See also, *Bennett v. Parker*, 898

F.2d 1530, 1533-34 (11th Cir. 1990) (a "conclusory allegation" cannot defeat summary

judgment); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987)

("Conclusory allegations of discrimination, without more, are not sufficient to raise an

inference of intentional discrimination."); *Betkerur v. Aultman Hospital Association*, 78

F.3d 1079, 1096 (6th Cir. 1996) ("Rumors, conclusory allegations and subjective

beliefs...are wholly insufficient evidence to establish a claim of discrimination as a matter

of law."); *Louis-Webb v. Qualico Steel Co.*, 929 F.Supp. 385, 392 (M.D. Ala.

1996)(Inferences and opinions must be grounded on more than flights of fancy,

speculations, hunches, intuitions or rumors.).


*Daniel has failed to establish a prima facie case of retaliation.*

In the case at bar, Daniel contends that the City's retaliation was evidenced by its

failure to promote him to the position of captain. However, this claim fails as a matter of

law. First, before Daniel may advance his claim for retaliation, he bears the burden of

showing (1) that he engaged in a protected activity, (2) that he suffered an adverse

employment action, and (3) there some causal link exists between the two. *Galloway*,

2006 WL 1327808, at *2. Daniel has failed to carry this burden, even under the broad

pleadings submitted in his Complaint. Daniel's Complaint alleges that he was denied a

promotion as retaliation for his "prior protected activity." *Plaintiff's Complaint*,

paragraph 62. Daniel never clearly states in his Complaint exactly what, if any,

"protected activity" the Defendant had in mind as the alleged occasion for retaliation. Even assuming that he is referring to his accommodation of wearing a wrist brace *and* his settled lawsuit from April of 2000 which he filed the last time he was denied a promotion, Daniel has failed to allege any new or on-going protected activity not resolved in full between Daniel and the Defendant on January 24, 2001. (See Complaint attached as Exhibit "A"). In the absence of a protected activity, Daniel has merely pleaded that he was denied a promotion because of events which were resolved four years earlier, thus failing to establish a prima facie case of retaliation.

Additionally, even assuming that Daniel did have an applicable protected activity, and further assuming that denial of the promotion was an adverse employment action, Daniel has failed to provide any evidence, direct, circumstantial, or otherwise, to support his bare allegation that Daniel's failure to merit the promotion was in retaliation against his protected activity. Daniel neglected to mention in his complaint that five other applicants were also not awarded the promotion, nor has he alleged whether those applicants did or did not have protected activities of their own. See *Plaintiff's Complaint* attached as Exhibit "A", paragraphs 44-58; See also *Affidavit of Mayor Oscar Crawley* attached as Exhibit "H", page 1. Instead, Daniel has attempted to meet his burden of establishing a prima facie case of retaliation with nothing more than allegation.

The courts of the Eleventh Circuit have clearly and repeatedly stated that a grant of summary judgment is appropriate when the plaintiff fails to "create a genuine issue of fact

about causation, [such] that no reasonable jury could find a causal link." *Brungart*, 231 F.3d at 798; *Galloway*, 2006 WL 1327808, at *3. Daniel's allegation of causation is all the more weakened by the large lapse of time between his alleged protected activity and the adverse employment action. "[Where] a substantial period of time has elapsed between the two events - engagement in the protected activity and the adverse employment action - the causal connection is less likely to exist absent evidence demonstrating a connection between the two events." *Breech v. Ala. Power Co.*, 962 F.Supp 1447, 1461 (S.D.Ala. 1997) ("In the present case, more than a year passed between the protected activity and the discharge. [Plaintiff's] discharge was not temporally close enough to support an inference of causal connection."), *aff'd*, 140 F.3d 1043 (11th Cir. 1998). That is precisely the case here. Daniel's alleged protected activities are remote in time from the adverse employment action, with nearly four years elapsing between Daniel's settled lawsuit on January 24, 2001, and the captain promotions occurring on December 15, 2004. Daniel filed no other EEOC complaints until *after* the decision to promote Jennings and Thrower had already been made, thus making it impossible to retaliate against acts that had yet to occur.

Even Daniel's allegation of being offended by the Garfield cartoon provides no reasonable grounds by which a jury could find that his employer denied Daniel a promotion in retaliation for being offended. In fact, Daniel failed to give notice to his supervisors, file a grievance, or otherwise alert his employers of any offense or charge of

discrimination. (See Affidavit of Chief Johnson attached as Exhibit "I" and the Affidavit of Captain Kelly Meacham attached as Exhibit "J"). By Daniel's own admission, the only person he claims to have complained to about the cartoon is the very person he also says *recommended him for the promotion.* See *Plaintiff's Complaint* attached as Exhibit "A", paragraphs 42, 50. As such, even assuming Daniel's allegations to be correct, there is no evidence that even his undocumented complaint about a cartoon at work was grounds for retaliation. See *Galloway*, 2006 WL 1327808, at *4,5 (granting summary judgment to defendant employer in retaliation/harassment suit, holding that while acts by coworkers including penis jokes might be "juvenile, crude, and unprofessional," they were not made by supervisors and did not alter the terms and conditions of plaintiff's employment.). Daniel has presented no other facts over which there is a genuine, material dispute, nor has he supplied evidence of any other possible causal link. In the case at bar, the Plaintiff has failed to provide any set of facts on which a finding of causation could exist to establish a prima facie case of retaliation. As such, dismissal by summary judgment is appropriate as a matter of law.

*Daniel has failed to provide evidence that his employer's legitimate, non-discriminatory reason was pretextual.*

It is clear that Daniel has failed to establish a prima facie case to resist summary judgment. However, even if a prima facie case is assumed, Daniel's claim still fails.

"Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). "If that burden is met, the plaintiff then bears the ultimate burden of proving, by a preponderance of the evidence, that the reason is a pretext for the retaliatory conduct." *Galloway*, 2006 WL 1327808, at *3. "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E/ Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004)(citations omitted).

Daniel's employer, the Defendant, has provided a legitimate, non-retaliatory reason for the decision to offer the promotion to someone other than Daniel. Mayor Crawley received a recommendation from Chief Johnson that "a captain should be a paramedic because of the percentage of ambulance calls versus the amount of fire calls." *Affidavit of Mayor Oscar Crowley*, page 2, attached as Exhibit "H." According to department statistics, over the five years leading up to the time of the promotion, 77.22% of calls to the department were EMS and rescue related, while only 5.65% of calls were for fire. *Id.* Therefore, the department has a legitimate, non-discriminatory interest in protecting the public by promoting to captain persons who have attained the training level of paramedic, thus ensuring the captain's qualification for the vast majority of calls received. Mayor Crawley has clearly stated that "[the selection process was based upon the recommendation of the fire chief. Based upon the City's knowledge, the selection of

the captains had everything to do with their being paramedics and nothing to do with Mr. Daniel and his previous claims against the City or previous lawsuit." *Id.*

"Other that his bald assertions, [Plaintiff has] offered no evidence that the stated reasons for the adverse employment actions were pretextual." *Galloway*, 2006 WL 1327808, at *3. Daniel has admitted that Thrower and Jennings, the two candidates who were promoted, were qualified for the job. See *Complaint*, paragraphs 45-46, attached as Exhibit "A." However, Daniel has failed to allege that either Thrower or Jennings lacked paramedic certification or that Daniel in fact has such qualifications. In a sworn affidavit issued by then Chief Anthony Johnson, the chief stated that,

> Terry Daniel is an outstanding employee as an apparatus operator. Unfortunately, fire operations only make five to six percent of our call volume. . . . Terry has not obtained certification as an advance emergency medical technician or paramedic and does not want to at this point in his career. It is my belief that if he were a paramedic, he would be at the top of the promotion list. This has been told to Terry in his evaluation of February 1, 2005.

*Affidavit of Chief Anthony Johnson*, attached as Exhibit "I."

Daniel has simply failed to come forward with any evidence to support his speculative allegation, much less meet the standard of preponderance of the evidence. As such, having failed to establish that his employer's reasons for denial of promotion "were pretext for retaliation in violation of Title VII," Daniel's claims are ripe for a grant of summary judgment in favor of the Defendant. *Galloway*, 2006 WL 1327808, at *3.

## Conclusion

In this case, Daniel has made vague, unsupported allegations of discrimination against his employer. He has based these allegations on disputes which were resolved and legally binding on Daniel years before the alleged claim of retaliation. Daniel has failed to demonstrate a causal link between his alleged (but unspecified) protected activity and his failure to be chosen as captain, thus failing to establish prima facie case. Daniel has failed to allege facts that even approach a preponderance of evidence that his employer's legitimate reason for denying Daniel a promotion was a pretext for retaliation. In sum, Daniel's claim against the Defendant City of Lanett is without merit or support and is due to be dismissed as a matter of law by this Honorable Court.

Respectfully submitted,

T. RANDALL LYONS (LYO006)
Attorney for Above-named Defendant

OF COUNSEL:

Webster, Henry, Lyons & White, P.C.
P.O. Box 239
Montgomery, AL 36101
334-264-9472
334-264-9599

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing mail on all counsel of record <u>as listed below</u> by placing a copy thereof, in the United States mail, postage prepaid, on this the 28th day of July, 2006.

Heather Newsom Leonard
Heather Leonard, P.C.
2108 Rocky Ridge Road, Suite One
Birmingham, AL 35216

OF COUNSEL