1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION


TERRY DANIEL,

    Plaintiff,

vs.                                    CIVIL ACTION NO.
                                       CV-00-M-400-E

CITY OF LANETT FIRE and
EMS DEPARTMENT,

    Defendant.


    * * * * * * * * * * * *

    DEPOSITION OF TERRY L. DANIEL, taken pursuant to stipulation and agreement before Danny D. Tyler, Certified Shorthand Reporter and Notary Public in and for the State of Alabama at Large, in the Law Offices of Nix, Holtsford, Gilliland, Lyons & Higgins, Suite 300, 300-A Water Street, Montgomery, Alabama, on the 29th day of September, 2000, commencing at approximately 10:15 a.m.

    * * * * * * * * * * * *



Haislip, Ragan, Green, Starkie & Watson, P.C.    (334)263-4455

Page 110

1  back to work.
2  Q. All right. And since February 1997, has the
3     city continued to pay for the brace?
4  A. I still got the original braces.
5  Q. So there's no ongoing expense with that?
6  A. No, sir. Plus I helped pay for the brace
7     myself at the beginning, but the city did
8     after the EEOC -- I told the EEOC about it,
9     and EEOC recommend the city pay for that
10    brace and reimburse me. We paid for the
11    brace in December, but it's still almost two
12    months later before I'm even allowed to go
13    back to work.
14 Q. All right. Since February of 1997, have you
15    requested any other type of accommodation
16    because of the injury that you have to your
17    right hand or wrist?
18 A. No, sir.
19 Q. And sitting here today, do you feel like
20    when you use that brace you are fully able
21    to do all of your job duties as an apparatus
22    operator?
23 A. As up to today, I have.

Page 111

1  Q. Since February of 1997, have you received
2     any additional medical treatment for your
3     right hand or wrist?
4  A. Since '97?
5  Q. Yes, sir.
6  A. I did go through a surgery on my hand. If
7     you see, I have a deformity on the hand. In
8     '96, I had a -- See, prior to that, this
9     finger came all the way in, and so I had to
10    have something done with this in '96. So I
11    had had some treatment for the deformity of
12    the finger to get it stretched, but it can't
13    be stretched -- I can't have no more
14    surgery, though.
15 Q. Okay. Since 1997, you haven't had any
16    additional medical treatment for your right
17    hand?
18 A. I don't -- I mean I might have seen
19    Dr. Hillyer. I might have. I remember one
20    time I seen Dr. Hillyer and told him, you
21    know, if he could possibility give me a
22    prescription for pain one time because, like
23    I said, I picked up heavy people and it kind

Page 112

1     of bothered me.
2        And this was at the ER, and he said oh,
3     yeah, because he knew the history of my --
4     He just wrote me a prescription. He said
5     take it when you need it, but I try not to
6     take it. I mostly take sometimes Advil or
7     stuff like that when it bother me, something
8     light. I don't like medication to be honest
9     with you.
10 Q. When you are utilizing the brace on your
11    right hand and wrist, do you feel like you
12    have any restrictions? Is there anything
13    that's a part of your job that you feel like
14    you can't do?
15 A. I do my job.
16 Q. Okay.
17 A. The brace don't get in the way. See, the
18    advantage of my brace about my doing my job,
19    when I flip it up and get it out of my hand,
20    I still can use my hand.
21        (Defendant's Exhibit Number 6
22         marked for identification.)
23 Q. Mr. Daniel, let me show you a grouping of

Page 113

1     documents that your lawyer has produced to
2     me. I'm going to mark them as Defendant's
3     Exhibit 6. I'm handing these to you. I'm
4     not sure that they are in the right order or
5     not.
6  A. I can help you out.
7  Q. All right. Are you familiar with that
8     document, Defendant's Exhibit 6? Do I have
9     it in backwards order?
10 A. (Nods head in the affirmative.)
11 Q. All right. Well, I'll put a new sticker on
12    the new front page.
13 A. Yes, sir.
14 Q. Do you recognize this set of documents?
15 A. Yes, sir.
16 Q. What is Defendant's Exhibit 6?
17 A. It is a document history containing from --
18    Let me see that again.
19 Q. Sure.
20 A. The pages that I see right here with the
21    number, I'm going to put them in order.
22 Q. Okay. Please do.
23 A. They go from October 31st, 1996. I kind of

Page 114

1     kept a little history what taken place and
2     what was said to me. Then the first EEOC
3     case, I was recommend by the EEOC -- They
4     told me to keep notes, and I took their
5     advice.
6  Q. So what that is is a document that you
7     prepared after you filed your EEOC complaint
8     where you just kind of kept up with what was
9     going on?
10 A. From October 31st when the bad day hit, yes,
11    sir.
12 Q. And when is the last date entry on that
13    document?
14 A. One is a separate document. I mean it
15    definitely right here need to be separate
16    from the original document. The last date
17    is January 31st, 1997 when I received the
18    affidavit and when I signed. And the last
19    date on this piece of paper is the date
20    February 7th, and that's the date I
21    returned.
22 Q. All right. The document that we are looking
23    at that's Defendant's Exhibit 6, was it kept

Page 115

1     like a diary where you would do the entries
2     as they occurred?
3  A. Yes, sir.
4  Q. Okay. Is it in order now?
5  A. Yes, sir.
6         (Defendant's Exhibit Number 7
7          marked for identification.)
8  Q. All right. Let me show you this document
9     that you pulled out and separated from that
10    original grouping of documents. I'm going
11    to mark this as Defendant's Exhibit 7. Tell
12    me what that document is.
13 A. I just sent EEOC a letter asking them to
14    review my claim I filed with EEOC, and the
15    reason I did that is because the way I was
16    intimidated, threatened and cursed in the
17    signing the document before I could go back
18    to work and was not never informed of all
19    the process about the charges.
20        And my concern is I were allowed to be
21    threatened, intimidated, cursed. All these
22    things wasn't suppose to happen, and when I
23    brought it to their attention, wasn't