IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY DANIEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NUMBER: |
| v. | ) | |
| | ) | 3:05cv01110-WKW |
| CITY OF LANETT, ALABAMA, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S BRIEF IN RESPONSE TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Heather N. Leonard
HEATHER LEONARD, P.C.
2108 Rocky Ridge Road, Suite 1
Birmingham, AL 35216
*phone*: (205) 978-7899
*fax*: (205) 278-1400
Heather@HeatherLeonardPC.com

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.     THE DEFENDANT RETALIATED AGAINST MR. DANIEL BY
       DENYING HIM A PROMOTION TO THE POSITION OF
       CAPTAIN IN DECEMBER 2004. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.     <u>Mr. Daniel presented evidence of a prima facie case of
              retaliation.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

              1.     Mr. Daniel engaged in protected activity. . . . . . . . . . . 12

              2.     Mr. Daniel presented evidence of causation. . . . . . . . . 14

       B.     <u>The Defendant's reason for not promoting Mr. Daniel is
              pretextual.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

              1.     This is the only circumstance where paramedic
                     certification was used in the selection of a Captain. . . 18

              2.     The Defendant did not follow its policies and
                     procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              3.     One of the decisionmakers was a person about whom
                     Mr. Daniel had complained of retaliation. . . . . . . . . . . 22

              4.     Remarks of the Defendant's agents and officers prior
                     and subsequent to the decisions challenged in this action
                     suggest a retaliatory motive. . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

## STATEMENT OF FACTS

The Plaintiff, Terry Daniel, began working for the Defendant, the City of Lanette, in 1979 as a volunteer Firefighter.[1]  In 1981, the Defendant promoted Mr. Daniel to  full time status where he worked for the fire department as an ambulance driver in addition to working as a Firefighter.[2]  While working for the Defendant, Mr. Daniel received certification as a Basic Emergency Medical Technician ("EMT").[3] In 1983, the Defendant promoted Mr. Daniel to the position of Fire Cause Investigator.[4]  In 1989, the Defendant promoted Mr. Daniel to the position of Lieutenant.[5]

The Defendant promoted Mr. Daniel to the position of Apparatus Operator in 1994.[6]  The position of Apparatus Operator fills in for the position of Captain in the Captain's absence.[7]  Mr. Daniel filled in as Captain on several occasions for a collective amount of time of over a year.  He assumed the duties and responsibilities

---

[1]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 2.

[2]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 3.

[3]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 4.

[4]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 5.

[5]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 6.

[6]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 7.

[7]    Id.

1

of Fire Captain on the following occasions: (1) September 1994 - February 1995, (2) August 1995 - December 1995, and January 2001 - March 2001.[8]  Mr. Daniel received commendations from the Defendant for his performance when he performed the duties and responsibilities of Captain.[9]

In 1996, Mr. Daniel filed a Charge of Discrimination against the Defendant alleging that the Defendant failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA").  *See Daniel v. City of Lanett*, 2000 U.S. Dist. LEXIS 18504, *3 (M. D. Ala. 2000).  This claim was resolved after Mr. Daniel signed a release form in February 1997 to the same.  *See Daniel,* 2000 U.S. Dist. LEXIS 18504 at *3-4.

In December 1998, Mr. Daniel filed a second Charge of Discrimination against the Defendant after he was rejected for a promotion to the position of Captain on three (3) different occasions.  *See id.* at *4.  That charge formed the basis of a federal lawsuit which Mr. Daniel brought under the ADA and the Rehabilitation Act of 1973 which was resolved in 2001 after the District Court denied the Defendant's *Motion for Summary Judgment.*[10]  In Mr. Daniel's first lawsuit, he alleged that the Defendant

---

[8]     Id.

[9]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 8 and Exhibit 2 to the Affidavit.

[10]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶¶ 11-14.

denied him a promotion to the position of Captain on three (3) separate occasions in retaliation for his having filed an EEOC Charge in 1996.[11]

After filing his first lawsuit, Mr. Daniel did not have an opportunity to seek a promotion to the position of Captain until late 2004.[12] In the interim between the resolution of Mr. Daniel's retaliation lawsuit in 2001, and his efforts to seek a promotion to Captain in late 2004, Mr. Daniel's co-workers and supervisors made negative remarks to him about his EEOC Charges and lawsuit.[13] The new Fire Chief communicated to Mr. Daniel in August 2002 that he had been warned to "watch out" for Mr. Daniel because he had sued the City and filed an EEOC Charge.[14] Several months later, the same Fire Chief teased Mr. Daniel saying he would not put his hand on Mr. Daniel's shoulder out of fear of a lawsuit.[15]

In 2003, Mr. Daniel complained to his Fire Chief that his Captain, John Butler, along with Mr. Daniel's shift co-workers, teased him about having complained of discrimination and sued for retaliation.[16] The Fire Chief told Mr. Daniel not to come

---

[11]    Id.

[12]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 15.

[13]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16.

[14]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(a).

[15]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(a).

[16]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(b).

to work early to avoid the situation.[17]  Mr. Daniel filed a grievance alleging that he

was receiving retaliatory treatment from his Captain, John Butler.[18]  In response, the

Fire Chief forwarded Mr. Daniel's grievance to Captain Butler, the person about

whom Mr. Daniel was complaining, for Captain Butler to handle the grievance.[19]  Mr.

Daniel complained to the Defendant's City Manager about this situation.[20]  Following

Mr. Daniel's complaint to the Defendant about Captain Butler, Captain Butler told

Mr. Daniel that he could not allow him to drive a certain truck because he was scared

Mr. Daniel would sue the Defendant if something happened.[21]

In 2004, the Fire Chief asked Mr. Daniel if he had an agreement with the City

about being promoted to the position of Captain.[22]  At the same time, one of Mr.

Daniel's coworkers asked him why a lawyer was involved in the selection process for

the next Captain.[23]  This prompted Mr. Daniel to speak with  Shirley Motley, the

Acting City Manager/City Clerk, about the negative comments being made towards

---

[17]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(b).

[18]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(b).

[19]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(b).

[20]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(b) and Affidavit Exhibit 3.

[21]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(c).

[22]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(e).

[23]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(f).

him at the fire department relating to his past complaints of discrimination/legal activity.[24]  Mr. Daniel also contacted the mayor for the Defendant to complain about the negative comments he was experiencing.[25]  Even though a meeting was scheduled for December 6 after Mr. Daniel spoke with the mayor, the meeting did not occur.[26]

In mid-November 2004, Mr. Daniel learned that the Defendant was posting a vacancy for the position of Captain.[27]  Following the posting of the position, one of the Defendant's Captains commented to Mr. Daniel that the Fire Chief referenced whether Mr. Daniel's resolution of his lawsuit required the promotion of Mr. Daniel.[28] Shortly thereafter, a second Captain's position became available.[29]

Within a week of the second Captain's position coming available, Mr. Daniel found a Garfield cartoon posted on a bulletin board in his workplace making fun of Mr. Daniel for suing the City.[30] Mr. Daniel complained to Captain Kelley Meacham

---

[24]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 16(g).

[25]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶¶ 21, 23, 25.

[26]    Id.

[27]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶¶ 22, 26.

[28]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 24.

[29]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 26.

[30]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 27 and Affidavit Exhibit 4.

that he found the cartoon to be offensive.[31]  Captain Meacham's response was that he had already seen the cartoon.[32]

Mr. Daniel applied for the two (2) vacancies for Captain.[33]  Mr. Daniel met the posted qualifications for the position.[34]  The Defendant's policies and procedures require that the top three (3) applicants for a position receive interviews,[35] and that promotion selections should be based on 1) quality of past job performance, 2) ability, and 3) seniority.[36]

Mr. Daniel's Captain recommended Mr. Daniel as his top applicant for the position of Captain.[37]  Despite this recommendation, the Defendant selected two (2) persons with less seniority and experience than Mr. Daniel for the Captain's position:

---

[31]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 27.

[32]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 27.

[33]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 28.

[34]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 28 and Affidavit Exhibit 5.

[35]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 30 and Affidavit Exhibit 8.

[36]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 31 and Affidavit Exhibit 9.

[37]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 32 and Affidavit Exhibit 10.

Sam Thrower and Tim Jennings.[38]   After this selection, Mr. Daniel met with the mayor to further discuss not only the on the job comments he was experiencing, but also the denial of his promotion to Captain.[39]   The mayor told Mr. Daniel he would have another chance to make Captain when the next opening came open.[40]

On at least two (2) occasions since initiating this cause of action, the Fire Chief has commented to Mr. Daniel that the City would not post another Captain's position until his lawsuit was finished.[41]   There is currently a Captain's position which is vacant.  Hal Shelly is the acting Captain for that vacancy.[42]   Mr. Shelly has been acting Captain since Spring 2005.[43]  Mr. Shelly is not a licensed paramedic, and is not a certified Apparatus Operator.[44]  He does not have Fire Officer 1 or 2 training.[45]  He is a licensed EMT.[46]  Mr. Shelly did not apply for a Captain's position.[47]

---

[38]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶¶ 29, 33.

[39]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 35.

[40]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 35.

[41]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 36.

[42]     Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 37.

[43]     Id.

[44]     Id.

[45]     Id.

[46]     Id.

[47]     Id.

In January 2006, the Defendant interviewed Mr. Daniel for the position of Fire Chief after he submitted an application.[48]  During the interview, City Manager Joel Holley asked Mr. Daniel why he should say to the City Counsel that they should promote Mr. Daniel in light of the fact that he was suing the City.[49]

---

[48]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 39.

[49]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 39.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

I.    THE DEFENDANT RETALIATED AGAINST MR. DANIEL BY DENYING HIM A PROMOTION TO THE POSITION OF CAPTAIN IN DECEMBER 2004.

The federal anti-discrimination laws prohibit employers from engaging in unlawful retaliation against employees who complain that their employers have engaged in conduct made unlawful by the Act. *See Burlington Northern and Santa*

9

*Fe Railway Co. v. White*, 165 L. Ed. 2d 345, 356 (2006). Retaliation occurs when an employer's actions "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 165 L. Ed. 2d at 352. The anti-retaliation provisions of these laws are important because the laws depend for their "enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses." *Id.* at 359. "Interpreting the anti-retaliation provision to provide broad protection from retaliation helps assure the cooperation upon which accomplishment of the Act's primary objective depends." *Id.*

 

A.    <u>Mr. Daniel presented evidence of a prima facie case of retaliation.</u>

The Supreme Court for the United States established the framework for analyzing a case of discrimination based on circumstantial evidence, such as this one, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 668, 93 S. Ct. 1817 (1973). Under this framework, "the Plaintiff must establish a prima facie case of discrimination. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). To establish a prima face case, Mr. Daniel must prove (1) he participated in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. *See Tomczyk v. Jocks*

10

*& Jills Restaurants, LLC*, 2006 U.S. App. LEXIS 20375, *20 (11th Cir. Aug. 9, 2006).

"The prima face requirement for making a Title VII claim 'is not onerous,' (citation omitted) and poses 'a burden easily met.' (citation omitted)" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000). "It is 'only the first stage of proof in a Title VII case,' and its purpose is simply to 'force [a] defendant to proceed with its case.'" *Cline*, 206 F.3d at 660 (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861-62 (6th Cir. 1997)). "This division of intermediate evidentiary burdens is not meant to stymie employees, but simply serves to 'bring the litigants and the court expeditiously and fairly to the ultimate question.'" *Id.*

In its *Motion for Summary Judgment*, the Defendant challenges Mr. Daniel's ability to prove the first and third elements of a prima facie case. Initially, the Defendant challenges Mr. Daniel's ability to prove he engaged in protected activity by arguing (a) he did not plead with particularity in his Complaint his protected activity, and (b) he did not engage in any protected activity since 2001. The Defendant next argues Mr. Daniel cannot prove causation by arguing that the amount of time which passed between Mr. Daniel's lawsuit and the denial of promotion to one of the two Captain's positions in 2004 negates an inference of causation. Both of the Defendant's arguments ignore the evidence presented by Mr. Daniel.

11

1.    Mr. Daniel engaged in protected activity.

The Eleventh Circuit has recognized that in addition to EEOC Charges and discrimination lawsuits, complaints of discrimination and/or retaliation to an employer constitute protected activity.    *See Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002).  Without question, Mr. Daniel's 1996 and 1999 EEOC Charges and federal lawsuit constitute protected activity.  Mr. Daniel also made the following internal complaints prior to being denied the two (2) Captain's positions which amount to protected activity:

- In 2002, Mr. Daniel complained to Fire Chief Monroe that his teasing of Mr. Daniel about his lawsuit offended him.

- In 2003, Mr. Daniel filed a grievance and letter of complaint about retaliation and harassment from his Captain, John Butler.

- In November 2004, Mr. Daniel complained to Shirley Motley, the Acting City/Manager/City Clerk about retaliatory comments relating to his past protected activity.

- In November and December 2004, Mr. Daniel complained to the mayor for the Defendant about the retaliatory comments he was experiencing relating to his prior protected activity.

- On December 12, 2004, Mr. Daniel complained about the Garfield

12

cartoon making fun of his prior protected activity.

The Defendant's argument that this Court cannot consider these incidents because they were not plead with particularity in Mr. Daniel's complaint is without merit.  The doctrine of notice pleading, applicable to discrimination/retaliation claims, provides that Mr. Daniel's claim for retaliation is not subject to dismissal for "failure to state a claim merely because it fails to 'plead facts establishing a prima facie case' of discrimination." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).  Courts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant. *See Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1284-85 (M.D. Ala. 1999) (holding that complaint setting forth general allegations about nature of conspiracy was sufficient despite heightened pleading standard applicable to conspiracy claims under Fed. R. Civ. P. 9(b), where information about extent of alleged conspiracy was within defendants' exclusive control); *see also Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983) (holding that liberalized consideration of complaint espoused in Conley "is particularly true in an antitrust suit where the proof and details of the alleged conspiracy are largely in the hands of the alleged co-conspirators.").

Mr. Daniel's Complaint identifies not only the protected activity of his prior

13

EEOC Charges and lawsuit in paragraphs 23 through 29, but also identifies in paragraphs 31, 33, 35, and 42 internal complaints of retaliation including his November and December 2004 complaints to the Defendant's Acting City Manager/Clerk, Defendant's mayor, and Mr. Daniel's Captain. Viewing the evidence in a light most favorable to Mr. Daniel, he established a prima facie case.

2.    Mr. Daniel presented evidence of causation.

The causation prong of a prima facie case of retaliation "should be interpreted broadly; all things equal, the test tends to favor the plaintiff." *Daniel*, 2000 U.S. Dist. LEXIS 18504 at *7. In carrying his burden of proof on this element, Mr. Daniel does not have to prove that retaliatory animus is the "sole cause" for him not being promoted to Captain; "a 'but for' showing is sufficient.'" *Id.* At *8. "Moreover, [Mr. Daniel] does not need to prove the underlying claim of discrimination that lead to his protest, so long as he 'had a reasonable good faith belief that the discrimination existed.'" *Id.*

To establish causation, Mr. Daniel need only to show that the "protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993). The Defendant does not deny knowledge of Mr. Daniel's protected activity, and the

14

evidence demonstrates that the decisionmakers identified by the Defendant for the promotion decision (Captain John Butler, Captain Kelly Meacham, Fire Chief Johnson, and Mayor Oscar Crawley) knew of Mr. Daniel's protected activity. The repeated negative comments and history or retaliation experienced by Mr. Daniel demonstrate that the Defendant did not approve of Mr. Daniel engaging in protected activity. Furthermore, the fact that Mr. Daniel was denied one of the two Captain's positions so shortly after his November and December complaints of retaliation suggests causation. *See Trujillo-Cummings v. Public Service Co. of New Mexico,* No. 97-2337, 1999 U.S. App. LEXIS 5745, at *6 (10th Cir. March 29, 1999) (observing that temporal proximity may justify an inference of retaliatory motive); *King v. Preferred Technical Group,* 166 F.3d 887, 893 (7th Cir. 1999) (holding that temporal proximity can establish the causal connection element); *McClendon v. Indiana Sugars, Inc.* 108 F.3d 789, 796 (7th Cir. 1997) ("We agree that . . . such a closely related sequence of events is sufficient to present a prima facie case."); *Hite v. Biomet, Inc.,* 38 F. Supp. 720, 741 (N.D. Ind. 1999) ("It is well-settled that the temporal proximity between protected activity and an adverse action may suffice to demonstrate a causal link for purposes of a prima facie case.).

The Defendant ignores Mr. Daniel's internal complaints in the years following resolution of his lawsuit and argues that the amount of time which passed between

15

Mr. Daniel's lawsuit alleging the defendant retaliated against him for complaining of discrimination by denying him on three (3) occasions a promotion to the position of Captain, and the Defendant twice denying him a promotion to the position of Captain is too great to infer causation. It is well established that temporal proximity alone is not dispositive of the issue of causation. The Eleventh Circuit recently reaffirmed that it has "rejected any per se rule as to the length of time necessary to create such an inference." *Kamensky v. Dean*, 2005 U.S. App. LEXIS 19926, at *8 (11th Cir. Sept. 14 2005). This is because opportunities for retaliation do not always immediately present themselves. *See e.g., Mandell v. County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003).

The Defendant seized the first opportunity Mr. Daniel presented to it to retaliate against him. Following his lawsuit, Mr. Daniel did not have an opportunity to seek a promotion to the position of Captain until the events forming the basis of this cause of action. Viewing the evidence in a light most favorable to Mr. Daniel, he established the third element, causation, of a prima facie case of retaliation.

B.    The Defendant's reason for not promoting Mr. Daniel is pretextual.

"Because of the availability of seemingly neutral rationales under which an employer can hide its discriminatory intent, and because of the difficulty of accurately

16

determining whether an employer's motive is legitimate or is a pretext for discrimination, there is reason to be concerned about the possibility that an employer could manipulate its decisions . . . . ." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998).

Pretext can be shown by showing that the employer's stated reasons for its adverse action were not credible or were motivated by a discriminatory reason. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Pretext can be shown by illustrating the weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action. *See Hodgens*, 144 F.3d at 168. In determining pretext, the evidence, and inferences that properly can be drawn from the evidence presented to prove the employee's prima facie case, may be considered in determining whether the employer's explanation is pretextual. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

"Even if an employer's actions and articulated reasons are facially neutral . . ., if in reality the employer acted for a prohibited reasons . . ., then its asserted reason . . . cannot insulate it from liability." *Id.* "This means that where a plaintiff . . . makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly

17

cautious' about granting the employer's motion for summary judgment.**"** *Id.*   Trial courts should use restraint in granting summary judgment for the Defendant when discriminatory animus is at issue.  *See id.*

The Defendant assert that it did not select Mr. Daniel for the position of Captain in late 2004 because he was not a paramedic, and the Defendant wanted a certified paramedic "because of the percentage of ambulance calls versus the amount of fire calls."[50]  *Defendant's Brief,* p. 17.  This reason is a pretext for denying Mr. Daniel, a man who performed the position of Captain for a collective amount of time in excess of a year and who worked for the Defendant as an ambulance driver, the promotion to Captain because the use of this criteria has not been applied in any other circumstances prior to or subsequent to Mr. Daniel seeking the Captain's position, and because the use of the criteria deviates from the City's established policies and procedures.

1.    This is the only circumstance where paramedic certification was used in the selection of a Captain.

The Defendant has not insisted on individuals placed in the position of Captain

---

[50]    It is not in dispute that Mr. Daniel was qualified for the position of Captain.  *See Defendant's Brief, Exhibit F, Letter of John Butler dated November 29, 2004.*

18

prior or subsequent to Mr. Daniel seeking the position of Captain in 2004, to be a certified paramedic. The job description for the position of Captain does not require that a Captain be a paramedic.[51] The Captain's position filled by the Defendant immediately prior to the positions at issue in this action were the subject of Mr. Daniel's prior lawsuit. In that action, the Defendant did not consider whether an applicant seeking the position of Captain was a paramedic.[52] *See Daniel*, 2000 U.S. Dist. LEXIS 18504, at *12-16. The fact that paramedic training is not part of the job description for Captain, and the fact that it has not been used as a criteria in selection prior Captains suggests pretext.

Furthermore, the person appointed by the Defendant in the Spring of 2005 (after Mr. Daniel filed his EEOC Charge which is the basis of this lawsuit) to serve as acting Captain when a vacancy because available is not a paramedic. Hal Shelly was appointed by the Defendant to serve as interim Captain in the Spring of 2005, and has continued in that position to this date.[53] Mr. Shelley is not a licensed paramedic.[54] The fact that the Defendant did not use the criterion, paramedic

---

[51]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 24 and Exhibit 5.

[52]    In that action, the District Court concluded that Mr. Daniel presented evidence of pretext.

[53]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 37.

[54]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 37.

certification, it asserts it used to deny Mr. Daniel a Captain's position just a few months following the decisions challenged in this action suggests pretext.

2.    The Defendant did not follow its policies and procedures.

The Defendant's failure to adhere to its own policies suggests pretext when set policies and rules are not followed. *See Morrison v. Booth,* 763 F.2d 1366, 1373-74 (11th Cir. 1985).    The Defendant did not follow its own selection criteria and interview policies[55] in denying Mr. Daniel a promotion to Captain.

The Defendant's policies and procedures require that promotions be based on seniority, past job performance, and ability.[56]  It is undisputed that Mr. Daniel was the most senior, qualified applicant.[57]  It is further undisputed that he his job performance was almost perfect.  Mr. Daniel's performance evaluation to cover his performance in the year 2004 rates his performance as "Outstanding," and shows that he received perfect scores in the following areas: quality, productivity, job knowledge, reliability, attendance, independence, creativity, adherence to policy, judgment, and definitions

---

[55]    The Defendant's policies and procedures require that the top three (3) applicants for a job be interviewed.  In this action, the Defendant admittedly did not follow this procedure.

[56]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 31 and Affidavit Exhibit 9; *Daniel*, 2000 U.S. Dist. LEXIS 18504 at *14.

[57]    Defendant's Evidentiary Materials, Exhibit F - Memo of John Butler, p. 2 ("He is the candidate with the most seniority.")

of performance ratings.[58]  Out a possible score of 100, Mr. Daniel received a 98 on his evaluation.[59]  Further it is undisputed that Mr. Daniel had the ability to perform the Captain's position.  In his job as Apparatus Operator, he is required to fill in for vacant Captains, and has done so on three (3) separate occasions for a collective period of over a year with commendation.

In comparison, the applicants selected over Mr. Daniel were less senior to him by a minimum of thirteen (13) years and had received prior disciplinary action where Mr. Daniile had not.[60]  There is no evidence that these gentlemen ever performed the duties of Captain.  Viewing the evidence in a light most favorable to Mr. Daniel, a jury could find pretext from the Defendant's failure to adhere to its own promotion criteria.  *See Daniel*, 2000 U.S. Dist. LEXIS 18504, at *16 (concluding that a jury could find pretext when this Defendant improperly neglected to consider its promotion criteria in making its decisions).

3.    One of the decisionmakers was a person about whom Mr. Daniel

---

[58]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 29 and Affidavit Exhibit 6.

[59]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 29 and Affidavit Exhibit 6.

[60]    Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 29.

had complained of retaliation.

Approximately a year before the decisions at issue in this action were made, Mr. Daniel complained to the Defendant that John Butler, his then Captain, was retaliating against him.[61]  Captain Butler knew of Mr. Daniel's complaint.[62]  As the Defendant concedes in its brief, Captain Butler was one of the two initial persons selecting candidates for the position of Captain.  Mr. Daniel's Captain at the time of the selection, Kelley Meacham, recommended Mr. Daniel as his top applicant.  Mr. Butler, a person about whom the Defendant knew Mr. Daniel had concerns of retaliation, recommended Mr. Daniel as his almost last selection.  However, the Defendant chose to ignore Captain Meacham's recommendation which was not tainted by any bias, and accept the recommendation of Captain Butler about which the Defendant has reason to be suspect.  From this evidence, a reasonable jury could find pretext.

    4.    Remarks of the Defendant's agents and officers prior and subsequent to the decisions challenged in this action suggest a

---

[61]    Plaintiff's Evidentiary Materials, Exhibit 1- Affidavit of Terry Daniel, ¶ 19 and Affidavit Exhibit 3.

[62]    Plaintiff's Evidentiary Materials, Exhibit 1- Affidavit of Terry Daniel, ¶ 19 and Affidavit Exhibit 3.

retaliatory motive.

The evidence shows that prior and subsequent to the decision to promote Sam Thrower and Tim Jennings to the position of Captain, Mr. Daniel experienced numerous negative remarks about his prior lawsuit and EEOC Charges. In 2002, the Fire Chief communicated to Mr. Daniel that he had been warned by the Defendant to watch out for him because he had filed an EEOC Charge. That same Fire Chief later teased Mr. Daniel implying he was litigious. One of the decisionmakers in this action, John Butler, teased Mr. Daniel about his prior protected activity.

Subsequent to initiating this action, Mr. Daniel was told that the Defendant would not post another Captain's position until his lawsuit was over. He was also asked in an interview for another promotion why he should be recommended for a promotion in light of his current litigation. These remarks are all circumstantial evidence of the Defendant's retaliatory motive and suggest pretext. *See Daniel*, 2000 U.S. Dist. LEXIS 185404, at *13 n.6 (finding statements of the Defendant's agent undermined the Defendant's explanations for denying Mr. Daniel promotions and were relevant to a pretext analysis).

## CONCLUSION

Viewing the evidence in a light most favorable to Mr. Daniel, a reasonable jury

could conclude that the Defendant's decision not to promote Mr. Daniel to one of the two vacant Captain's position was motivated by retaliatory animus in light of the fact that since engaging in protected activity, the Defendant subjected Mr. Daniel to constant negative remarks about his protected activity prior and subsequent to the decision at issue and the Defendant deviated from its own promotion criteria to use a criterion it abandoned months later to justify denying Mr. Daniel's a promotion. The Defendant's pending motion should be denied and this matter should proceed to trial.

                                        **/s/ Heather Newsom Leonard**
                                        Heather Newsom Leonard
                                        ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, P.C.
The Gross Building
2108 Rocky Ridge Road, Suite 1
Birmingham, AL 35216
phone:       (205) 978-7899
fax:         (205) 278-1400
e-mail:      Heather@HeatherLeonardPC.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record on August 22, 2006, through the Court's CM/ECF system:

T. Randall Lyons
WEBSTER, HENRY & LYONS, P.C.
P.O. Box 239
Montgomery, AL 36101


**/s/ Heather N. Leonard**
Of Counsel