IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TERRY DANIEL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NUMBER: |
| v. ) | |
| ) | 3:05cv01110-WKW |
| CITY OF LANETT, ALABAMA, ) | |
| ) | PLAINTIFF REQUESTS ORAL |
| Defendant. ) | ARGUMENT. |

PLAINTIFF'S SUR-REPLY BRIEF IN RESPONSE TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Heather N. Leonard
HEATHER LEONARD, P.C.
2108 Rocky Ridge Road, Suite 1
Birmingham, AL 35216
*phone*: (205) 978-7899
*fax*: (205) 278-1400
Heather@HeatherLeonardPC.com

# **TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THE DEFENDANT RETALIATED AGAINST MR. DANIEL BY DENYING HIM A PROMOTION TO THE POSITION OF CAPTAIN IN DECEMBER 2004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    <u>Mr. Daniel presented evidence of a prima facie case of retaliation.</u> . . 1

        1.    This is the only circumstance where paramedic certification was used in the selection of a Captain. . . . . . . . . . . . . . . . . . . 5

        2.    The Defendant did not follow its policies and procedures. . . . 6

        3.    The Defendant has expressed through various officers and agents its displeasure with Mr. Daniels's prior protected activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# ARGUMENT

I. THE DEFENDANT RETALIATED AGAINST MR. DANIEL BY DENYING HIM A PROMOTION TO THE POSITION OF CAPTAIN IN DECEMBER 2004.

 A. <u>Mr. Daniel presented evidence of a prima facie case of retaliation.</u>

"The prima facie requirement for making a Title VII claim 'is not onerous,' and poses 'a burden easily met.'" *Cline v. Catholic Diocese*, 206 F.3d 651, 660 (6th Cir. 1999) (internal citations omitted). "The prima facie phase 'merely serves to raise a rebuttable presumption of discrimination by 'eliminating the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff].'" *Cline*, 206 F.3d at 660. "It is 'only the first stage of proof in a Title VII case,' and its purpose is simply to 'force [a] defendant to proceed with its case.'" *Id.* " This division of intermediate evidentiary burdens is not meant to stymie plaintiffs, but simply serves to 'bring the litigants and the court expeditiously and fairly to the ultimate question.'" *Id.*

The Defendant ignores both this fundamental analysis and the Rule 56 mandate that disputed facts must be resolved in favor of the non-movant to argue that it disputes Mr. Daniel engaged in protected activity in the time period between his prior Title VII lawsuit and the denial of his promotion to Captain in

December 2004. Specifically, the Defendant argues that since it did not document Mr. Daniel's complaints in his personnel file,[1] they must not have occurred. This does not negate the evidence presented by Mr. Daniel that in addition to his prior EEOC Charges and lawsuit, he engaged in protected activity in 2002 by

---

[1]  The Defendant's lack of documentation of Mr. Daniel's complaints does not mean that a complaints did not occur. The Third Circuit cautioned courts in *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996), to be wary of savvy Defendants who learn to cloak discriminatory actions in legitimate motives to escape liability:

> Anti-discrimination laws and lawsuits have "educated" would-be violators such that extreme manifestations of discrimination are thankfully rare. Though they still happen, the instances in which employers and employees openly use derogatory epithets to refer to fellow employees appear to be declining. Regrettably, however, this in no way suggests that discrimination based upon an individual's race, gender, or age is near an end. Discrimination continues to pollute the social and economic mainstream of American life, and is often simply masked in more subtle forms. It has become easier to coat various forms of discrimination with the appearance of propriety, or to ascribe some other less odious intention to what is in reality discriminatory behavior. In other words, while discriminatory conduct persists, violators have learned not to leave the proverbial "smoking gun" behind. As one court has recognized, "defendants of even minimal sophistication will neither admit discriminatory animus or leave a paper trail demonstrating it." *Riordan v. Kempiners,* 831 F.2d 690, 697 (7th Cir. 1987). But regardless of the form that discrimination takes, the impermissible impact remains the same, and the law's prohibition remains unchanged. "Title VII tolerates no racial discrimination, subtle or otherwise." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).
>
> The sophisticated would-be violator has made our job a little more difficult. Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and "a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled . . . because of crabbed notions of relevance or excessive mistrust of juries." *Riordan*, 831 F.2d at 698.

85 F.3d at 1081-1082.

complaining to Fire Chief Monroe of retaliation, in 2003 by complaining about retaliation and harassment from John Butler, in November 2004 by complaining to the Acting City/Manager/City Clerk about retaliatory comments relating to his past protected activity, in November and early December 2004 by complaining to the Mayor for the Defendant about retaliation, and on December 12, 2004 by complaining about the Garfield cartoon.  Viewing the disputed evidence in a light most favorable to Mr. Daniel, Mr. Daniel engaged in protected activity.

     The Defendant argues Mr. Daniel did not present evidence from which a jury could infer that his protected activity/activities were related to the Defendant's decision to deny him a promotion to the position of Captain in late December 2004.  The Defendant argues that Mr. Daniel cannot establish causation because other persons were also denied a promotion to Captain, and too much time passed between Mr. Daniel's prior lawsuit and the denial of the promotion.  The Defendant's first argument, that others were denied a promotion to Captain, is misplaced.  In order to establish causation, Mr. Daniels need only prove that  the "protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993).  Mr. Daniel did this by presenting evidence that the decisionmakers involved in the denial of his promotion knew of his protected activity, numerous

3

negative things were said to him by officials and agents of the Defendant indicating the Defendant's institutional displeasure with him for engaging in protected activity, and that he was denied a promotion to Captain within days of engaging in protected activity. The fact that other applicants were denied a promotion does not establish that retaliation did not motivate the Defendant denying a promotion to Mr. Daniel, the most senior applicant. Drawing all reasonable inferences in favor of Mr. Daniel, he presented sufficient evidence to establish causation.

The Defendant's argument about timing is likewise misplaced. Mr. Daniel presented evidence that he engaged in protected activity within days of the adverse decision being made. Moreover, he presented evidence that the first opportunity that the Defendant had to retaliate against him since the resolution of his prior lawsuit was the promotion decision being challenged in this action. Because opportunities to retaliate against an employee do not immediately manifest themselves to employers, the passage of time cannot be dispositive on the issue of causation. *See Kamensky v. Dean*, 2005 U.S. App. LEXIS 19926, at *8 (11th Cir. Sept. 14 2005) ("reject[ing] any per se rule as to the length of time necessary to create such an inference."); *see e.g., Mandell v. County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003). Viewing the evidence in a light most favorable to Mr. Daniel,

he presented evidence from which a reasonable jury could infer causation.

> B. <u>The Defendant's reason for denying Mr. Daniels a promotion is pretextual.</u>

Viewing the evidence presented by Mr. Daniel in a light most favorable to him, a reasonable jury could conclude that the reason given by the Defendant for not promoting Mr. Daniel, that he lacked a paramedic certification, is a sham to conceal the Defendant's retaliatory motives. A jury could find pretext based on one or more of the following reasons:

> 1. This is the only circumstance where paramedic certification was used in the selection of a Captain.

The Defendant concedes that paramedic certification is not part of the qualifications for the position of Captain, and that the individual most recently placed in the position of Captain, Hal Shelly, is not a licensed paramedic. The Defendant argues that Mr. Shelly's lack of certification is irrelevant because he is not a permanent Captain. This distinction does not negate the inference of pretext because Mr. Shelly has held this position of interim Captain for over a year, despite the fact that the Defendant's own policies and procedures provide that a

temporary assignment is not to exceed 180 days.[2] The Defendant's actions of putting Mr. Shelly, someone who had neither sought the Captain's position in December 2004, nor received a recommendation for it, as an acting Captain for over a year (as opposed to Mr. Daniel) indicates that the paramedic certification for the person performing the job of Captain has not been important to since denying Mr. Daniel a promotion to Captain.[3]

      2.      The Defendant did not follow its policies and procedures.

Pretext can be found when an employer's choice for a promotion deviates from the preferences set by its regulations making a promotion decision. *Vessels,* 2005 U.S. App. LEXIS 8068 at *22-23. The Defendant's policies and procedures require that promotions be based on seniority, past job performance, and ability.[4]

---

[2] Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, Affidavit Exhibit 8, pp. 14-15. The policy also provides that after 30 days in the interim Captain's position, Mr. Shelly began receiving Captain's level pay.

[3] It also suggests pretext because Mr. Shelly's serving as a Captain for over a year deviates from the Defendant's policies and procedures. *See Vessels v. Atlanta Independent School System,* 2005 U.S. App. LEXIS 8068, *22 (11th Cir. 2005) (finding pretext in a employment discrimination promotion case when an employer deviated from its regulations to extend an interim appointment beyond the allotted time).

[4] Plaintiff's Evidentiary Materials, Exhibit 1 - Affidavit of Terry Daniel, ¶ 31 and Affidavit Exhibit 9; *Daniel*, 2000 U.S. Dist. LEXIS 18504 at *14.

It is undisputed that Mr. Daniel was the most senior, qualified applicant.[5] It is further undisputed that he his job performance was rated as "Outstanding." Viewing the evidence in a light most favorable to Mr. Daniel, a jury could find pretext from the Defendant's failure to again adhere to its own promotion criteria as it relates to Mr. Daniel seeking a promotion to the position of Captain. *See Daniel*, 2000 U.S. Dist. LEXIS 18504, at *16 (concluding that a jury could find pretext when this Defendant improperly neglected to consider its promotion criteria in making its decisions).

> 3.  The Defendant has expressed through various officers and agents its displeasure with Mr. Daniels's prior protected activity.

The evidence shows that on many occasions both prior and subsequent to the decision to promote Sam Thrower and Tim Jennings to the position of Captain, agents and officers of the Defendant made numerous negative remarks to Mr. Daniel about his prior lawsuit and EEOC Charges. These remarks indicate an institutional prejudice against Mr. Daniel due to his protected activities. These

---

[5] Defendant's Evidentiary Materials, Exhibit F - Memo of John Butler, p. 2 ("He is the candidate with the most seniority.")

remarks are all circumstantial evidence of the Defendant's retaliatory motive and suggest pretext. *See Daniel*, 2000 U.S. Dist. LEXIS 185404, at *13 n.6 (finding statements of this Defendant's agent undermined the Defendant's explanations for denying Mr. Daniel promotions and were relevant to a pretext analysis).

## CONCLUSION

Viewing the evidence in a light most favorable to Mr. Daniel, a reasonable jury could conclude that the Defendant's decision not to promote Mr. Daniel to one of the two vacant Captain's position was motivated by retaliatory animus in light of the fact that since engaging in protected activity, the Defendant subjected Mr. Daniel to constant negative remarks about his protected activity prior and subsequent to the decision at issue and the Defendant deviated from its own promotion criteria to use a criterion it abandoned months later to justify denying Mr. Daniel's a promotion. The Defendant's pending motion should be denied and this matter should proceed to trial.

/s/ **Heather Newsom Leonard**
Heather Newsom Leonard
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, P.C.
The Gross Building
2108 Rocky Ridge Road, Suite 1
Birmingham, AL 35216
phone:      (205) 978-7899
fax:        (205) 278-1400
e-mail:     Heather@HeatherLeonardPC.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record on September 13, 2006, through the Court's CM/ECF system:

T. Randall Lyons
WEBSTER, HENRY & LYONS, P.C.
P.O. Box 239
Montgomery, AL 36101


                                            **/s/ Heather N. Leonard**
                                            Of Counsel